[663 NYS2d 156]

In the Matter of DANIEL R. FRUITBINE (Admitted as DANIEL RICHARD FRUITBINE), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 14, 1997

**APPEARANCES OF COUNSEL**

*Jorge Dopico* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Bruce Perlmutter* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, was admitted to the practice of law in the State of New York by the Second Judicial Department on March 18, 1970, as Daniel Richard Fruitbine. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.[1]

On or about March 7, 1995, respondent was served with a notice and statement of charges alleging that he had violated Code of Professional Responsibility DR 1-102 (A) (3), (4) and (7) (now [8]) (22 NYCRR 1200.3). The charges stemmed from respondent having unlawfully carried a loaded pistol while accompanying a client when he demanded repayment of debts from a grocery store owner.

On or about June 21, 1995, respondent served an answer in which he regretfully admitted that the "charges as brought are essentially factually correct". He went on to urge the Committee not to discipline him, claiming that the incident was inadvertent and that it constituted his first professional transgression in the 25 years he had been practicing.

A Hearing Panel convened on February 13, 1996 to hear testimony and receive evidence relating to the charges. Respondent testified on his own behalf at the hearing. At the conclusion of the hearing, both sides suggested that a public censure was appropriate. After allowing respondent substantial time to submit mitigation evidence, which he failed to do, the Panel issued its report and recommendation on January 7, 1997. In the report, the Panel sustained all of the charges against respondent and recommended a three-year suspension. Notably, the Panel wrote: "[W]e did not believe respondent's testimony."

By petition dated March 6, 1997, the Departmental Disciplinary Committee seeks an order confirming the Panel's report and recommendation and imposing the recommended sanction.

By affirmation submitted April 21, 1997, respondent's counsel opposes the motion. Counsel contests the Panel's determination that the pistol he admittedly carried was loaded and insists that the appropriate sanction in this case should be public censure.

---

1. By letter dated May 16, 1997, the Departmental Disciplinary Committee advises that, on April 30, 1997, respondent was suspended by the Appellate Division, Second Department, from the practice of law pending the disposition of other disciplinary charges against him.

Briefly stated, the Panel found that on November 23, 1992, respondent drove from Central Valley, New York, to Manhattan, carrying a pistol in his car's glove compartment and a shotgun with ammunition in the trunk. In Manhattan, respondent picked up a client and two purported "interpreters" and drove to a grocery store in Newark, New Jersey. Respondent claimed that the purpose of his visit to the grocery store was to ascertain the validity of loans made by his clients to grocery store owners. The Panel specifically rejected this explanation, finding that the trip was made, in part, to assist in the collection of large sums of money owed to his clients by the store owners.

Before going into the store, respondent took the pistol out of the glove compartment, loaded it, tucked it into the waistband of his pants, and dropped his sweatshirt over his waistband. He testified that he did so because he feared that it was unsafe to leave the gun in the car in that neighborhood. The Panel rejected this explanation, stating, "we are convinced that respondent was engaged in a debt collection mission and brought the pistol for its persuasive power."

The four men then entered the store. Respondent testified that he loitered near the back of the store while his client and one of the interpreters had a conversation with the store owner, which quickly escalated into a heated "rapid-fire" exchange. At that point a store employee walked outside and called "911" from a cellular phone.

Shortly thereafter, respondent poked his head outside and learned from a passer-by that the employee had called the police because someone in the store had a gun. Respondent then panicked. He quickly walked down the street to an alley, removed the pistol from its holster, unloaded it, threw the magazine and holster into one garbage can and the pistol into another, and then returned to the grocery store. The Panel found that respondent did this with the intention of concealing the pistol from the police.

Moments after he returned, the police arrived, detained and searched respondent and the others, and asked about the presence of drugs. The police put the men in a police car and continued to investigate the situation. About 15 minutes later, one of the officers asked respondent where the gun was and respondent told him. Respondent testified that he decided to cooperate because he was afraid that the gun would be found by children or undesirables. The Panel rejected this explanation, finding it far more likely that he feared that police would find

the gun anyway. Respondent also told the police about the shotgun in his trunk. The police then arrested[2] him and took him and the others to the police station.

At the station that night, the grocery store owner told the police that he had told the men that having respondent there with "a gun in his waist band and his hand on it" was no way to conduct business. Ten days later, the owner wrote a letter to the County Prosecutor stating that he voluntarily wanted to drop all charges against respondent, explaining that he had mistakenly believed that he was being held up and stating that respondent had not pointed any gun at him. The Panel did not place much credence in this letter, expressing suspicion about how the owner came to send it.

The Panel also found it significant that respondent did not call his client, the interpreters, or the store owner to testify at the hearing in support of his rendition of the events. The Panel stated that his "failure to do so reinforces our conclusion that respondent was acting far more like an enforcer than a lawyer."

In determining the appropriate sanction, the Panel considered in mitigation only that respondent did not have a record of any prior disciplinary proceedings. In aggravation, it noted the absence of mitigation evidence (despite the fact that respondent was given ample opportunity to submit such evidence) and his pattern of lying to the Panel. The Panel considered respondent's misbehavior to be "aggravated by his repeated attempts to sell to this panel and to the police his opportunistic versions of these events".

The Panel found *Matter of Lewis* (155 AD2d 205), which was apparently brought to its attention by the Committee, to be instructive in this matter. There, an attorney pleaded guilty to misdemeanor possession of a weapon after firing two shots from an unlicensed gun into an apartment door and was sentenced to three years' probation and suspended from the practice of law for two years.

The Committee acknowledges that *Lewis* involves several material differences, but maintains that respondent's misconduct was at least as severe considering that he carried the gun in order to intimidate the store owner into paying his clients.

In opposition, respondent reiterates his contention that the Panel erred by finding that he carried a *loaded* pistol into the

2. On or about August 31, 1993, in connection with that arrest, respondent enrolled in a pretrial intervention program, which resulted in the dismissal of all criminal charges against him a year later.

grocery store. While he admits that he carried the pistol into the store and that it was concealed, he denies that there was any evidence that it was loaded. This argument is belied by respondent's own testimony at the hearing, during which he admitted loading the pistol with a magazine of bullets.

We agree with the Hearing Panel's findings, but disagree with their recommended sanction. As stated by the Panel: "We do not condone in the slightest the conduct of a lawyer who brandishes a loaded pistol as a technique for collecting what is claimed to be a debt. Lawsuits, not pistols, are the dispute-resolving techniques of a civilized society. Reason and rhetoric, not weaponry, are the lawyer's armaments."

Although respondent's prior professional career was unblemished, the same cannot be said for the period subsequent to the present charges. However, regardless of his prior or subsequent record, we consider respondent's misconduct to be totally unacceptable and inexcusable, and of such a nature as to warrant his disbarment.

The Hearing Panel did not, nor do we, believe that respondent was out to assess the validity of any loans; rather the Panel was and we are convinced that respondent was engaged in a debt collection mission and brought the pistol for its persuasive power. In so doing, he knowingly engaged in behavior not only violative of the laws of New York and New Jersey, but also unacceptable and unbecoming an attorney.

Compounding the gravity of the charges against respondent is the Hearing Panel's finding that respondent regularly lied to it and was willing and eager to proffer whatever explanation of his conduct he thought likely to garner leniency, regardless of its truth.

In sum, the Panel's conclusions appear well supported by the evidence as well as respondent's own testimony. Given the nature of respondent's misconduct, his repeated dishonesty to the Panel, and the absence of mitigating factors, we find that disbarment is warranted.

Accordingly, the motion of the Departmental Disciplinary Committee is granted solely to the extent of confirming the Hearing Panel's findings and conclusions. The recommended sanction is disaffirmed, the respondent is disbarred, effective immediately, and his name is ordered stricken from the roll of attorneys and counselors-at-law authorized to practice law in this State.

MILONAS, J. P., ROSENBERGER, NARDELLI, WILLIAMS and ANDRIAS, JJ., concur.

Application granted solely to the extent of confirming the Hearing Panel's findings and conclusions, but the Panel's recommendation is disaffirmed, and respondent is disbarred from the practice of law in the State of New York, and respondent's name is ordered stricken from the roll of attorneys and counselors-at-law in the State of New York, all effective immediately.